**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

CENTER FOR BIOLOGICAL DIVERSITY
378 N. Main Avenue
Tucson, AZ 85701,

      *Plaintiff,*

  v.

NATIONAL OCEANIC & ATMOSPHERIC
ADMINISTRATION,
1401 Constitution Avenue NW, Room 5128
Washington, DC 20230

      *Defendant.*

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

 Case No.: 26-cv-2678

## INTRODUCTION

1.      In this action, the Center for Biological Diversity ("Center") challenges the failure of Defendant—the National Oceanic and Atmospheric Administration ("NOAA")—to promptly provide records concerning the agency's "Rulemaking to Amend the North Atlantic Right Whale Vessel Strike Reduction Rule (RIN 0648-BO42)" in violation of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

2.      The requested records concern an advanced notice of proposed rulemaking to repeal seasonal, mandatory ship speed limits in designated areas along the U.S. East Coast implemented to reduce the risk of vessel collisions with North Atlantic right whales. *See* 73 Fed. Reg. 60,173 (Oct. 10, 2008) ("Ship Speed Rule" or "Rule").

3.      With less than 400 individuals left on Earth, the North Atlantic right whale is one of the world's most endangered whales. Collisions with large ships and other vessels are one of the primary threats to the species' continued existence. These collisions are often deadly. When a

1

ship hits a whale with its hull, it can crush the whales' skulls or cause internal hemorrhaging, while hitting a whale with the propeller can cause fatal wounds and blood loss. In addition to killing whales, nonlethal collisions may weaken or otherwise harm right whales such that they are more likely to succumb to subsequent injury or death. Pregnant female right whales and mothers with nursing calves are especially at risk of vessel strikes because they spend most of their time near the surface of the water. These whales are also the demographics most important to the species' survival and recovery.

4.       The scientific evidence demonstrates that slowing down ships to certain speeds in waters where ships and right whales overlap dramatically reduces the chances of deadly vessel strikes. Accordingly, in 2008, NOAA Fisheries—the subagency within NOAA charged with protecting and recovering the North Atlantic right whale under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–1544, and Marine Mammal Protection Act ("MMPA"), *id.* §§ 1361–1389—issued the Ship Speed Rule, which requires most vessels 65 feet in length and greater to slow to 10 nautical miles per hour ("knots") or less in certain right whale feeding, migratory, and calving areas at certain times of year.

5.       NOAA has repeatedly concluded that the Ship Speed Rule has been effective at preventing deadly ship strikes of right whales, and in 2022 recognized that the Rule should be expanded to apply to smaller vessels and in more areas to help prevent the species' extinction.

6.       Yet, earlier this year, NOAA announced that it is considering repealing the Ship Speed Rule. *See* 91 Fed. Reg. 10,580 (Mar. 4, 2026). NOAA's stated principal objective in revising the Rule is to "reduce unnecessary regulatory and economic burdens on the regulated community." *Id*. Such deregulatory changes would result in the removal of vitally important protections for the species provided by the current vessel speed limits.

7.      On February 12, 2026, the Center submitted FOIA requests to NOAA seeking records relating to the development of this deregulatory plan. The requested records are vital to understanding the basis, rationale, and likely impacts of NOAA's potential repeal of the Ship Speed Rule. Such information is necessary for meaningful public participation in the rulemaking process. Without timely disclosure, the Center and its members cannot effectively understand or respond to the agency's proposal, which undermines FOIA's core purpose to ensure government transparency and accountability.

8.      To date, NOAA has neither issued a determination for the Center's February 12, 2026, request, nor responded to a May 27, 2026, appeal. NOAA has also failed to conduct an adequate search for responsive records and failed to promptly release responsive records.

9.      These failures undermine FOIA's policy of government transparency as prompt public access to records is necessary to effectuate FOIA's statutory purpose of transparency and accountability in government. The need for timely disclosure is especially urgent given the requested records' relevance to an ongoing public rulemaking process.

10.     Accordingly, the Center seeks (1) declaratory relief establishing that NOAA is in violation of FOIA and (2) injunctive relief directing NOAA to provide the Center with determinations on its requests, to conduct an adequate search for responsive records, and to promptly release all responsive records without further delay.

## JURISDICTION AND VENUE

11.     The Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331 because this action arises under FOIA and the Declaratory Judgement Act, 28 U.S.C. §§ 2201–2202.

12.     Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e). NOAA's subagency that issued the advanced notice of proposed rulemaking underlying the Center's FOIA request, NOAA Fisheries, is headquartered in this District. The federal official who signed the proposal resides in this District. The records requested are located in this District.

13.     Declaratory relief is appropriate under 28 U.S.C. § 2201(a).

14.     Injunctive relief is appropriate under 5 U.S.C. § 522(a)(4)(B) and 28 U.S.C. § 2202.

## **PARTIES**

15.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization with more than 101,000 members. The Center is headquartered in Tucson, Arizona and has offices throughout the United States. The Center works through science, law, and policy to maintain and increase protections for air and water; plants, animals, and their native habitats; a livable climate; public lands; and healthy communities. The Center's Oceans Program, which submitted the FOIA request at issue, specifically focuses on advocacy for the protection and recovery of endangered and threatened marine species and their habitats.

16.     NOAA's failure to comply with FOIA harms the Center because it deprives the Center from timely obtaining information about NOAA's development of its plan to deregulate vessel speeds off the U.S. East Coast. If finalized, NOAA's proposal would fundamentally alter and weaken regulations that have protected North Atlantic right whales for decades. Timely disclosure is vital to ensure that the Center and its members are able to understand the development and effects of the proposal and to meaningfully participate in the public rulemaking process.

4

17.     NOAA's failure to comply with FOIA also harms the Center's ability to provide full, accurate, and current information to its members and the public on a matter of public interest. The need for timely disclosure is especially salient given the ongoing public process for the proposal at issue in the Center's FOIA request. Absent this information, the Center's mission to protect endangered and threatened species and their habitats is adversely affected. The Center has also been required to expend resources to prosecute this action due to NOAA's failure to issue determinations in line with FOIA's statutory timelines and failure to respond to the Center's administrative appeal. The relief requested by the Center will remedy the harms NOAA has caused to the Center by compelling timely disclosure of the requested records.

18.     Defendant NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION ("NOAA") is an agency within the U.S. Department of Commerce and, through its subagency NOAA Fisheries, is tasked with conserving and managing the nation's marine resources. NOAA Fisheries (also known as the National Marine Fisheries Service) is the federal agency charged with implementing the ESA and MMPA for most marine species, including the North Atlantic right whale. . NOAA is the federal agency that possesses and controls the records the Center seeks and thus is subject to FOIA. *See* 5 U.S.C. § 552(f). As such, NOAA is responsible for fulfilling the Center's FOIA requests.

## **STATUTORY BACKGROUND**

19.     FOIA's primary purpose is to improve government transparency and accountability by requiring the disclosure of agency records and information. It establishes the public's right to access all federal agency records, 5 U.S.C. § 552(a), unless one or more narrow statutory exemptions apply, *id*. § 552(b).

20.     Recognizing that the timely disclosure of requested records is essential to fulfilling its purpose, FOIA imposes strict deadlines for agencies to respond to FOIA requests.

21.     Within twenty working days of receiving a request, an agency must (1) determine if it will release requested records and (2) notify the requester of (a) its determination and the reasons therefore, (b) the right to seek assistance from the FOIA Public Liaison, and (c) the right to appeal an adverse agency determination. *Id*. § 552(a)(6)(A).

22.     In order to make a lawful "determination," the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the "determination" is adverse. *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013).

23.     An agency may extend the twenty working day deadline for an additional ten working days only by giving written notice to the requester that sets forth the "unusual circumstances" that justify an extension, and by providing a date by which the agency expects to make a determination. 5 U.S.C. § 552(a)(6)(B)(i). To invoke such "unusual circumstances," however, the agency must provide the requester with "an opportunity to limit the scope of the request so that it may be processed within [twenty working days] or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request." *Id*. § 552(a)(6)(B)(ii). When asserting that such unusual circumstances warrant an extension, the agency must make its FOIA Public Liaison available to assist in the resolution of any disputes between the requester and the agency. *Id.*

24.     FOIA requires agencies to process requests on an expedited basis when the requester demonstrates a "compelling need." *Id*. § 552(a)(6)(E)(i)(I). A compelling need exists

where there is "urgency to inform the public concerning actual or alleged Federal Government activity" and the request is made by persons "primarily engaged in disseminating information." *Id*. § 552(a)(6)(E)(v). Agencies must determine whether to provide expedited processing within 10 days of receiving the request. *Id.* § 552(a)(6)(E)(ii).

25.     FOIA requires each agency to make reasonable efforts to search for records in a manner that is reasonably calculated to locate records that are responsive to the FOIA request. *Id*. § 552(a)(3)(C)–(D).

26.     FOIA requires federal agencies to promptly disclose requested records. *Id*. § 552(a)(3)(A), (a)(6)(C)(i).

27.     In certain limited instances, records may be withheld pursuant to nine specific exemptions. *Id*. § 552(b). These exemptions must be narrowly construed in light of FOIA's dominant objective of disclosure, not secrecy. An agency bears the burden of proof if it claims any exemption applies to withhold responsive documents. *Id*. §552(a)(4)(B). Even where records may be exempt from disclosure, FOIA requires agencies to disclose reasonably segregable portions of those records. *Id*. § 552(d).

28.     When an agency responds to a request before the requester has filed suit, the requester must administratively appeal a denial and allow the agency at least twenty working days to adjudicate that appeal. *Id*. § 552(a)(6)(A)(ii); *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 63 (D.C. Cir. 1990). However, when an agency fails to comply with the applicable statutory time limits for responding to a request, the requester is deemed to have constructively exhausted administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

29.     FOIA provides this Court jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id*. § 552(a)(4)(B).

## STATEMENT OF FACTS

30.     "[T]o reduce the occurrence and severity of vessel collisions with North Atlantic right whales, thereby contributing to the recovery and sustainability of the species while minimizing adverse effects on the shipping industry and maritime commerce," NOAA issued the Ship Speed Rule in 2008. 73 Fed. Reg. at 60,174; *see also id.* at 60,182 ("The goal [of the Ship Speed Rule] is to reduce or eliminate the threat of ship strikes in the endangered [right whale] population.").

31.     In issuing the Rule, NOAA explained how the best available science indicates that "the probability of a collision causing a whale's death increased rapidly and in a non-linear manner as vessel speed increased" and found that "between the speeds of 9 knots and 20 knots, the probability of collision causing a whale's death rose from 20 *to 100 percent*, respectively" and that "the greatest increase occurred between the speeds of 10 and 14 knots." 73 Fed. Reg. at 60,175 (emphasis added). NOAA then concluded that "the best available scientific evidence" demonstrated that "a maximum speed of 10 knots, as measured as 'speed over ground', in times and locations specified below, is the most effective and practical approach to reducing the threat of ship strikes to right whales." *Id*. at 60,178.

32.     The Rule establishes Seasonal Management Areas ("SMAs") in which a mandatory 10-knot speed limit applies to non-sovereign vessels of 65 feet in length and greater during specified times of the year. 50 C.F.R. § 224.105(a).

33.     NOAA designated the SMAs based on decades of data on right whale movement, distribution, and aggregation patterns during migration, feeding, and calving activities. The SMAs are located in particular waters off New England to help protect whales foraging and socializing in these areas in the late winter and spring; particular waters off the mid-Atlantic to help protect the whale's migratory corridor during the winter; and particular waters off Georgia and Northern Florida during right whale calving season to help protect the whales when in the species' only known calving grounds. 50 C.F.R. § 224.105(a)(1)–(3).

34.     The Rule has a safety exemption under which a vessel can exceed the speed limit when "oceanographic, hydrographic and/or meteorological conditions" necessitate traveling more than ten knots to maintain safe maneuvering speed, as attested in a vessel's logbook by the master. *Id.* § 224.105(c).

35.     In addition, NOAA also established a program of voluntary slow speed in designated Dynamic Management Areas ("DMAs"). 73 Fed. Reg. at 60,180. Under this program, DMAs of at least a three nautical mile radius are drawn upon the sighting of aggregations of three or more right whales in areas not already included in seasonal management zones. *Id*. The DMAs are temporary, lasting for 15 days with a possible 15-day extension if whales are re-sighted in the same area. *Id*. Mariners are asked, but not required, to avoid these areas altogether, or to travel through them at no more than 10 knots. *Id*

36.     The Rule went into effect on December 9, 2008, but NOAA included a five-year "sunset clause" under which the rule would expire on December 9, 2013. 73 Fed. Reg. at 60,173. NMFS stated that it would use this five-year period to "synthesize existing data, gather additional data, or conduct additional research on ship-whale interactions" to analyze the efficacy of the rule. *Id*. at 60,183.

37.     In 2013, NOAA issued a rule eliminating the sunset provision. 78 Fed. Reg. 73,726 (Dec. 9, 2013). The agency did so based on additional scientific evidence that reducing vessel speed to 10 knots or less decreases the risk of fatal vessel strikes and an assessment concluding that the Rule had been effective at reducing right whale mortality from ship strikes. For example, the proposed rule to eliminate the sunset provision described published studies showing that "the probability of lethal strikes [has] been diminished substantially as a result of the rule" and that "there have been no vessel-strike related right whale deaths in the areas covered by the vessel speed restriction rule [i.e., SMAs] since its implementation." 78 Fed. Reg. 34,024, 34,026 (June 6, 2013).

38.     In 2022, NOAA issued a proposed rule that would have implemented changes to the Ship Speed Rule "to further reduce the likelihood of mortalities and serious injuries to endangered right whales from vessel collisions . . . ."  In doing so, NOAA explained how "[r]educing vessel speed is one of the most effective, feasible options available to reduce the likelihood of lethal outcomes from vessel collisions with right whales." *Id*. at 46,923, and that expanding the Ship Speed Rule's protections is "essential to . . . prevent the species' extinction." *Id*. In January 2025, NOAA withdrew the proposed rule. The agency acknowledged that "vessel strikes, continue to threaten the survival of North Atlantic right whales" but stated that it would continue its conservation efforts "using existing management measures." 90 Fed. Reg. 4,711 (Jan. 15, 2025).

39.     In February 2026, the Center became aware that the Office of Information and Regulatory Affairs was reviewing an advanced notice of proposed rulemaking to amend the Ship Speed Rule. The notice was posted on the Office's dashboard, and assigned Regulatory Identification Number 0648-BO42.

10

40.     On February 12, 2026, the Center submitted a FOIA request to NOAA. The

Center requested records from January 20, 2025, to the date NOAA conducts the relevant search,

including:

> [R]ecords that comprise or contain the following information about NOAA's
> "*Rulemaking to Amend the North Atlantic Right Whale Vessel Strike Reduction
> Rule*" (RIN 0648-BO42): (1) Calendars, meeting logs, and attendee lists for any
> meetings in which vessel speed rules, whale strike risk, or the revocation of speed
> limits were discussed; and (2) Emails and chat messages with non-federal agency
> third parties (including but not limited to individuals, businesses, corporations,
> organizations, localities, states, or nations), *but excluding internal emails*.

41.     The Center's request to NOAA included the following search terms: North

Atlantic right whale; 2008 Vessel speed rule; real-time monitoring technology + whale; Whale

CHARTS Act; industry feedback + vessel speed rule; and meeting request + vessel speed rule.

42.     The Center's request to NOAA also included a list of record custodians consisting

of:

> Laura Grimm, Deputy Under Secretary; Eugenio Pineiro-Soler, Assistant
> Administrator; Timothy Petty, Assistant Secretary; Erik Noble, Principal Deputy
> Assistant Secretary for Oceans and Atmosphere; Emily Menashes, Deputy
> Assistant Administrator for Operations; Samuel D. Rauch III, Deputy Assistant
> Administrator for Regulatory Programs at NOAA Fisheries; [and] Caroline Good,
> NOAA Fisheries Office of Protected Resources.

43.     The Center's request to NOAA also included a request for a waiver of request

fees, under the 1986 amendments to FOIA.

44.     The same day, NOAA sent the Center two emails confirming receipt of this

request and providing a tracking number (DOC-NOAA-2026-001140).

45.     On February 13, 2026, NOAA sent the Center an email informing it that the

agency had "decided to grant [the Center's] request for a waiver of fees in accordance with 5

U.S.C. § 552(a)(4)(A)(iii) and 15 C.F.R. § 4.11(l)."

11

46.　That same day, NOAA sent a letter that acknowledged receipt of the Center's request and claimed that, due to "unusual circumstances," the agency required additional time and anticipated responding by March 30, 2026.

47.　In March 2026, NOAA publicly announced a new advance notice of proposed rulemaking considering possible deregulatory changes to the speed rule. NOAA stated that its objective was to "reduce unnecessary regulatory and economic burdens on the regulated community." 91 Fed. Reg. at 10,580.

48.　On March 31, 2026, the Center sent NOAA an email inquiring "[w]hat is the status of DOC-NOAA-2026-001140, now that March 30 has passed?"

49.　On April 8, 2026, the Center sent a second inquiry, requesting NOAA "advise as to the status of DOC-NOAA-2026-001140."

50.　On April 16, 2026, NOAA responded to the Center that "[w]hile the search using the search terms did return records, they do not contain information related to (RIN 0648-BO42). Please confirm at your earliest."

51.　On April 17, 2026, the Center responded and requested that NOAA "[p]lease produce all of the records that the search terms returned (within the date range we identified)." The Center then sent a follow-up email requesting that NOAA "please prioritize the docs re the Rulemaking to Amend the North Atlantic Right Whale Vessel Strike Reduction Rule" (RIN 0648-BO42) first?"

52.　On April 20, 2026, NOAA confirmed receipt of these emails but provided no further information.

53.　On April 27, 2026, NOAA requested "clarification for this FOIA request- we wanted to confirm you are not interested in news articles and news clip emails?"

12

54.     That same day, the Center affirmed NOAA's question and stated "[w]e agree to exclude news articles and news clip emails."

55.     On May 27, 2026, the Center sent NOAA a letter notifying the agency that "[its] failure to provide a determination within the statutory deadline, and not providing sufficient justification for its estimated date of completion amounts to a constructive denial of the Center's FOIA request." The Center's letter requested a response within 20 working days and advised the agency that the Center intended to "pursue legal action" if the responsive records were not immediately disclosed.

56.     At the same time, the Center requested an acknowledgment of receipt of its appeal letter. As of this filing, none has been received.

57.     As of the date of this filing, 97 working days have passed since NOAA received the Center's February 12, 2026, FOIA request. This is past the thirty working day deadline for requests falling under unusual circumstances required under FOIA. 5 U.S.C. § 552(a)(6)(A)(i). Additionally, 27 working days have passed since the Center submitted its appeal to NOAA.

58.     As of the date of this filing, NOAA has not provided a lawful determination to the Center describing the scope of the records NOAA intends to produce or withhold, explained the reasons for withholding any records, or informed the Center that it may appeal any specific adverse determination within the relevant time periods in 5 U.S.C. § 552(a)(6)(A) or § 552(a)(6)(B).

59.     As of the date of this filing, NOAA has not disclosed any records to the Center pursuant to its February 12, 2026 FOIA request.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**Defendant Failed to Comply with FOIA's Mandatory Determination Deadline**

60.    Plaintiff re-alleges and incorporates by reference all allegations made in all preceding paragraphs.

61.    The Center properly requested records within the control of Defendant agency NOAA through its February 12, 2026, FOIA request.

62.    The Center has a statutory right to a lawful and timely determination from NOAA on the Center's February 12, 2026, request in a manner that complies with FOIA. 5 U.S.C. § 552(a)(6)(A)(i), (a)(6)(B)(i).

63.    In order to make a lawful "determination," NOAA must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the determination is adverse. *Citizens for Responsibility & Ethics in Wash.*, 711 F.3d at 188.

64.    The deadline for NOAA to provide determinations on the Center's February 12, 2026, FOIA requests and subsequent appeal have lapsed. 5 U.S.C. § 552(a)(6)(A), (a)(6)(B)(i).

65.    NOAA's failure to provide a lawful determination on the Center's request by FOIA's mandatory deadline violates the Center's right to a timely determination. 5 U.S.C. § 552(a)(6)(A)(i), (a)(6)(B)(i).

66.    NOAA has no lawful basis under FOIA for its delay and provided no lawful basis to withhold a determination in response to the Center's request.

67.    The Center is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

68.    The Center's organizational activities will be adversely affected if NOAA is allowed to continue violating FOIA's requirement to provide a timely determination on the Center's request.

69.    Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in records requests to NOAA in the foreseeable future.

70.    Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, NOAA will continue to violate the Center's right to receive timely determinations in response to the Center's requests for records under FOIA.

## SECOND CLAIM FOR RELIEF

### Defendant Failed to Conduct an Adequate Search for Responsive Records

71.    Plaintiff re-alleges and incorporates by reference all allegations made in all preceding paragraphs.

72.    The Center has a statutory right to have NOAA process the Center's February 12, 2026, FOIA requests in a manner that complies with FOIA. 5 U.S.C. § 552(a)(3).

73.    NOAA has violated the Center's rights in this regard because it has unlawfully failed to conduct an adequate search reasonably calculated to locate all records responsive to the Center's February 12, 2026, FOIA requests. *Id.*

74.    NOAA has no lawful basis under FOIA for its failure to conduct an adequate search for records responsive to the Center's February 12, 2026, FOIA request.

75.    The Center is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

15

76. Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, NOAA will continue to violate the Center's right under FOIA to an adequate search for records responsive to the Center's February 12, 2026, FOIA request.

## THIRD CLAIM FOR RELIEF

### Defendant Failed to Promptly Disclose All Responsive Records

77. Plaintiff re-alleges and incorporates by reference all allegations made in all preceding paragraphs.

78. The Center has a statutory right to the prompt disclosure of requested records. 5 U.S.C. § 552(a)(3)(A).

79. NOAA is violating the Center's rights in this regard by failing to promptly disclose records responsive to the Center's February 12, 2026, FOIA requests. *Id.*

80. NOAA has provided no lawful basis to withhold records responsive to the Center's February 12, 2026, FOIA requests pursuant to any of FOIA's nine exemptions to mandatory disclosure or to withhold any segregable, nonexempt portion of the records. *See id.* § 552(a)(8)(A), (b)(1)–(9).

81. The Center is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

82. Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, NOAA will continue to violate the Center's right to promptly receive all records responsive to its February 12, 2026, FOIA requests.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Declare that Defendant is in violation of FOIA by failing to provide a timely, lawful determination on Plaintiff's February 12, 2026, FOIA request, failing to conduct an adequate search for responsive records, and failing to promptly disclose all responsive records;

(2) Order Defendant to provide a determination on Plaintiff's February 12, 2026, FOIA requests;

(3) Order Defendant to conduct a search reasonably calculated to locate all records responsive to Plaintiff's February 12, 2026, FOIA request;

(4) Order Defendant to produce, by a date certain, all nonexempt responsive records, any segregable portions of otherwise exempt records, and a *Vaughn* index of any records or portions of records withheld under any FOIA exemption;

(5) Enjoin Defendant from withholding any nonexempt responsive records or segregable portions of responsive records;

(6) Retain jurisdiction of this action to ensure that Defendant timely process Plaintiff's February 12, 2026, FOIA request and that no agency records or portions of records are improperly withheld;

(7) Award Plaintiff its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E) or 28 U.S.C. § 2412; and

(8) Grant such other and further relief as the Court may deem just and proper.

DATED: July 7, 2026                    Respectfully submitted,

*/s/ Daniel H. Waltz*
Daniel H. Waltz (Dist. Md. Bar 31307)
Center for Biological Diversity
1411 K Street NW, Suite 1300

17

Washington, District of Columbia 20005
dwaltz@biologicaldiversity.org
Tel: (303) 880-9136
Fax: (510) 844-7150

Seth Alston (*pro hac vice* forthcoming)
Center for Biological Diversity
100 Franklin Street, Suite 375
Oakland, California 94612
salston@biologicaldiversity.org
Tel: (510) 844-7100
Fax: (510) 844-7150

*Attorneys for Plaintiff*